UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH O.,[1] | ) |
| Plaintiff, | ) No. 22-cv-2256 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[2] | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph O. appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying him disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 16)[3] is DENIED; the Commissioner's motion for summary judgment (Dkt. 17) is GRANTED. The Commissioner's decision is affirmed.

**I.    BACKGROUND**

    **A.    Procedural History**

On August 19, 2019, Plaintiff filed an application for disability insurance benefits ("DIB") as well as an application for supplemental security income ("SSI"), both alleging disability beginning on August 1, 2017. (R. 265-82.) Plaintiff's applications were denied initially and upon reconsideration. (R. 88-151.) Administrative Law Judge ("ALJ") Michael Hellman held a two-part Administrative Hearing and subsequently issued a September 16, 2021 decision finding that

---

[1]  In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]  On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant for this action.

[3]  The Court construes Plaintiff's Brief in Support of Motion for Summary Judgment as a motion for summary judgment.

Plaintiff was not disabled. (R. 15-30.) On February 24, 2022, the Appeals Council denied Plaintiff's request for review (R. 1-8), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of the ALJ's decision (Dkt. 1), and the case was reassigned to the initial caseload of Magistrate Judge Keri L. Holleb Hotaling when she took the bench on August 10, 2023 (Dkt. 22).

B.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 15-30.) The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022 and had not engaged in substantial gainful activity since his alleged onset date of August 1, 2017, despite having worked as a convenience store cashier for twenty-five to thirty hours a week from mid-August 2020 through sometime in March 2021. (R. 18.) The ALJ found that it was "not an unsuccessful work attempt." (*Id.*) At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine impairments (thoracic and lumbar vertebral compression fractures and lumbar disc protrusions); obesity; depression; anxiety disorder; attention deficit hyperactivity disorder; and post-traumatic stress disorder. (R. 18.) The ALJ determined Plaintiff also had non-severe impairments of mild obstructive and restrictive lung disease, hypertension, and an isolated seizure episode. (R. 18-19.) The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. (R. 19.)

Before step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work with some physical and mental limitations. (R. 21.) At step four, the ALJ concluded Plaintiff would be unable to perform past relevant work. (R. 29.) At step five,

the ALJ concluded that, given Plaintiff's RFC, age, high school education, and work experience, there were jobs in significant numbers in the national economy that Plaintiff could perform. (*Id.*) The ALJ ultimately found Plaintiff was not disabled under the Social Security Act as to either his DIB or SSI application. (R. 30.)

**C.  Standard of Review**

On review, the Court does not "merely rubber stamp the ALJ's decision," but "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]'" *id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (further citation omitted)); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021), and the Court must affirm even if "reasonable minds could differ" or the evidence would support another conclusion. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

The ALJ need only "'minimally articulate'" the "'justification for rejecting or accepting specific evidence of a disability'" to satisfy the "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Under this standard, the Court is not to try the case de novo or supplant the ALJ's findings with the Court's assessment of the facts, whether as to credibility or conflicting record evidence. *Young*, 362 F.3d at 1001; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

**II.  ANALYSIS**

Plaintiff "raises no arguments with respect to the ALJ's findings regarding Plaintiff's physical impairments" and instead "concentrate[s] on . . . psychological" conditions (Dkt. 16 at 2

3

n.1), which the Court will likewise do. Plaintiff alleges the ALJ erred in the following ways: (1) the RFC determination was not supported by substantial evidence because the ALJ declined to limit Plaintiff to one-to-two-step tasks, failed to include RFC limitations to accommodate Plaintiff's moderately-impaired ability to sustain concentration, persistence, or pace (CPP), and rejected aspects of the opinion of Plaintiff's mental health treater, Dr. Rowles; and (2) rendered a decision that violated Social Security Ruling ("SSR") 16-3p. The Court begins with the ALJ's analysis and then addresses Plaintiff's arguments.

### A. The ALJ's Analysis

As is relevant here, before determining Plaintiff's RFC, the ALJ evaluated Plaintiff's mental limitations to consider whether the related "Paragraph B" or "Paragraph C" criteria were satisfied. As to the four paragraph B criteria, the ALJ determined that Plaintiff had mild limitations in the areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself, and moderate limitations in the areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace. The ALJ found that the Paragraph B criteria were not satisfied because Plaintiff's impairments did not cause at least two marked limitations or one extreme limitation; the ALJ also found the Paragraph C criteria were not met.[4]

In assessing Plaintiff's mental RFC, the ALJ discussed Plaintiff's testimony, submissions, mental health treatment, and assessments throughout the relevant time, providing an overview of records from 2017 to mid-2021. (R. 21, 22-24, 26, 28-29.) In particular, in October 2017, Plaintiff was hospitalized for two nights for in-patient mental health treatment and then attended a partial hospitalization program and intensive outpatient program, from the latter of which he was discharged in September 2018. (R. 22-23.) Plaintiff continued with mental health counseling (the

---

[4] Plaintiff does not challenge the ALJ's "Paragraph C" findings, so the Court will not detail those here.

ALJ detailed multiple sessions) and began seeing Dr. Rian Rowles in December 2019. Plaintiff continued with counseling for posttraumatic stress disorder, generalized anxiety disorder, depression, benzodiazepine use disorder, attention deficit hyperactivity disorder, and other conditions, and the ALJ catalogued and considered notes from Plaintiff's sessions. (R. 22-24.)

In formulating the RFC, the ALJ also considered opinions of state agency assessors. In January 2020, a state agency psychiatric evaluator assessed Plaintiff (R. 23, 94, 97-99, 110-112), and another evaluator generally reaffirmed his opinion, with a minor update, at the reconsideration level in August 2020. (R. 124, 128-30, 141, 145-47.) The evaluators opined that Plaintiff "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time" but "is capable of performing simple tasks" and "one and two step tasks." (R. 98, 111.) They also opined that Plaintiff "has difficulty in interacting appropriately with the general public." (R. 98, 111.) The ALJ found those opinions persuasive, except he noted that Plaintiff "appears to show much more improvement with interacting with others compared to the times of these assessments" and found "little basis to limit [Plaintiff] to one or two step tasks as the consultants had because the claimant indicated abilities to drive and to work as a cashier, both of which I infer take more than two steps to complete." (R. 28.) The ALJ found the opinions otherwise "consistent with the improvement claimant has been showing and supported by the preponderance of the objective findings." (*Id.*)

From August 2020 until sometime in March 2021, Plaintiff worked twenty-five to thirty hours a week as a convenience store cashier. (R. 18, 23, 27, 28.) In the middle of that period, in December 2020, Plaintiff was admitted to psychiatric hospitalization after he told his treating psychiatrist, Dr. Rowles, that he had thoughts of self-harm; at that time, Dr. Rowles completed a mental impairment questionnaire opining to more serious limitations in the areas of mental health functioning than the state agency assessing psychiatrists had found. (R. 20, 23, 26, 28-29,

5

1008-10.) The ALJ found Dr. Rowles's opinions at that time "minimally persuasive" because his questionnaire was completed while Plaintiff was in the hospital and was not well supported by his own outpatient findings and later records. (R. 28-29.) Plaintiff's employment ended in March 2021, and Plaintiff provided "varied" reports as to why, informing his therapist in March 2021 that he "quit;" testifying at the hearing that he "was taken off of the payroll;" and telling a consultative examiner that he was "fired." (R. 27, 18.)

Plaintiff traveled at least twice, once to Las Vegas and once to Minnesota; he also at one point planned to travel to a foreign country for perhaps a month. (R. 24, 27.) He attended movies with friends and "look[ed] for work daily." (R. 27.) The ALJ also considered the third-party function report from Plaintiff's mother, which he deemed "somewhat persuasive" to the extent supported by the objective medical evidence. (R. 29.)

The ALJ ordered an updated state agency psychiatric consultative examination in June 2021, during which the examiner spent 20 minutes with Plaintiff and felt Plaintiff performed poorly on a delayed recall task but generally had unremarkable results. (R. 26, 1470-73.) The ALJ indicated Plaintiff had merely "endorsed his symptoms" during the examination and noted the record did not show Plaintiff having "consistent[] difficulties with recall," given his work as a cashier. (R. 26.) The ALJ found Plaintiff "appears to respond to medication and therapy services when he is compliant, as the record indicates improvement over time." (*Id.*).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work with limitations that "he can frequently balance, stoop, crouch, kneel and crawl . . . [and] occasionally climb ladders, ropes, or scaffolds but [] never climb ramps or stairs," and "can understand and remember simple instructions to carry out and persist on simple tasks where there is no interaction with the public." (R. 21.)

6

B.   **The RFC is Supported by Substantial Evidence**

Plaintiff challenges the ALJ's RFC determination. Plaintiff first challenges the ALJ's rejection of a one-to-two-step task limitation indicated by the state agency psychiatric evaluators because the ALJ drew inferences from Plaintiff's activities and because "evidence supports" a contrary finding. (Dkt. 16 at 9.) The latter argument, of course, is insufficient. Plaintiff "cannot show reversible error simply by suggesting the evidence could support an alternative conclusion." *Maria S. v. Kijakazi*, No. 20-cv-6727, 2023 WL 7130376, at *8 (N.D. Ill. Oct. 30, 2023) (citing *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020)); *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)).

In any event, the ALJ supported the rejection of a one-to-two-step task limitation with substantial evidence. The ALJ acknowledged that state agency psychological consultants opined Plaintiff "is capable of performing simple tasks" and "one and two-step tasks" (R. 28, 98, 111, 130, 147), but the ALJ "found little basis to limit [Plaintiff] to one and two step tasks . . . because the claimant indicated abilities to drive and to work as a cashier, both [of] which [the ALJ] infer[red] take more than two steps to successfully complete." (R. 28.) The ALJ also noted within his opinion that Plaintiff "mentioned nothing about not being able to do the cashiering work because of his health." (R. 18.) In Plaintiff's mental RFC, the ALJ indicated that Plaintiff could "understand and remember simple instructions" and "carry out and persist on simple tasks when there is no interaction with the public." (R. 21.)

As Plaintiff suggests, courts have criticized ALJs for merely citing a claimant's ability to drive or perform a similar task that has more than two steps as the basis for rejecting a one-to-two-step task limitation in the workplace in favor of a limitation to "simple" work. *See, e.g.*, *Lissette B. v. Kijakazi*, No. 20-cv-7685, 2023 WL 2572431, at *2-3 (N.D. Ill. Mar. 20, 2023) ("Although [ALJ] suggested that [claimant's] daily activities, such as driving, using electronic devices to shop

7

and communicate, and caring for family, conflicted with the ability to perform only one-to-two step tasks, she did not explain why that was so."); *Fatime I. v. Kijakazi*, No. 20-cv-3603, 2022 WL 4605081, at *4 (N.D. Ill. Sept. 30, 2022) (explaining that ALJ insufficiently supported rejection of one-to-two-step task limitation by merely referencing claimant's ability to drive and brush teeth); *Michael S. v. Saul*, No. 19-cv-4033, 2020 WL 4052903, at *5 (N.D. Ill. July 20, 2020) (explaining that, to reject limitation to one-to-two-step tasks, "[i]It is not enough to simply state that the tasks above [including driving] require more than one-to-two steps"); *but see Christopher R. v. Kijakazi*, No. 21-cv-500, 2023 WL 5017942, at *5 (N.D. Ill. Aug. 7, 2023) (holding that "[t]he ALJ adequately explained why she rejected the state agency consultant's finding" where claimant "testified and submitted records indicating that he can drive for more than 30 minutes, and the ALJ explained that driving is an activity consisting of far more than two steps as it entails 'follow[ing] the safety rules of the road, follow[ing] traffic signals and stop signs, maintain[ing] control of the car, navigat[ing] intersections safely, and us[ing] appropriate speed'").

Similarly, an ALJ may not reject a one-to-two-step task limitation merely because a claimant worked part-time within the relevant period. *See Rodney S. v. Kijakazi*, No. 20-cv-1230, 2021 WL 3418858, at *13 (N.D. Ill. Aug. 5, 2021) (noting that "while an ALJ is entitled to consider a claimant's past work history, . . . the Seventh Circuit has also 'recognized that even persons who are disabled sometimes cope with their impairments and continue working long after they have been entitled to benefits," and "it is important to look at the jobs themselves and how they are performed by the claimant to determine whether this logically supports a finding that the claimant could sustain full time work") (citations omitted). Where, in past employment, the claimant was given "a generous amount of leeway," was "constantly monitored," or "may not have been disciplined in a manner commensurate with a mistake he made," for example, a claimant's past jobs might "lend little logical support to the idea that [he] can sustain a full-time position with no

8

assistance." *Id*.

Here, the ALJ drew an inference that Plaintiff's ability to drive meant he could perform tasks with more than one or two steps. Standing alone, that inference might warrant remand, but the ALJ also pointed to Plaintiff having performed a cashier job for twenty-five to thirty hours a week for more than six months between August 2020 and March 2021, which notably was after both of the psychological assessments that included one-and-two-step task limitations were rendered. The ALJ noted that, "[a]lthough his reports varied on whether he quit the job or was let go, [Plaintiff] did not allege that he was unable to do the job due to his health concerns or that he was performing the work differently than how one would generally perform it." (R. 27.) While greater insight into the ALJ's rationale generally is preferable, under the circumstances, the Court is able to follow the ALJ's reasoning regarding his rejection of a one-to-two-step task limitation. *See Cole v. Kijakazi*, No. 20-3309, 2022 WL 16748595, at *3 (C.D. Ill. Nov. 7, 2022) (holding that ALJ had properly supported claimant's mental RFC with reference to claimant "working as a tow truck driver, working on cars, handling money, driving, and performing some household chores"); *see also Christopher R.*, 2023 WL 5017942, at *5 (explaining that, where state agency psychologist's opinion "very simply stated, '[t]he claimant is capable of performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks[,] . . . [i]t was [] reasonable for the ALJ to read '1-2 step tasks' through a common-sense lens and find the state agency consultant's opinion inconsistent with the record evidence"). And, unlike the situation in *Rodney S.*, 2021 WL 3418858, upon which Plaintiff relies (Dkt. 19 at 4), there is no indication Plaintiff received special consideration, in the form of someone constantly monitoring his work or lenient discipline for egregious errors, while on the job as a cashier. Given the ALJ's engagement with the evidence, the ALJ's conclusion is not "suspended over air" like the ALJ's conclusion in *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011), where the ALJ had "discussed so little of the evidence" as to

9

leave her "conclusion that [plaintiff's] complaints of severe pain and fatigue '[we]re out of proportion to the objective physical findings'" unsupported. Accordingly, the Court finds no error on this ground.

Next, citing the premise that an ALJ generally may not address a moderate CPP limitation with a one-size-fits-all restriction to "simple work," Plaintiff faults the ALJ for failing to include a specific accommodation in the mental RFC for Plaintiff's assessed "moderate" CPP limitation. (Dkt. 16 at 9.) Plaintiff suggests that "reduced production demands, reduced work speed, or increased supervision" might have sufficed. (*Id.*)

It is well settled that "boilerplate 'limitations of concentration, persistence, and pace' including limiting a claimant's abilities to 'simple, routine tasks that do not require constant interactions with coworkers or the general public' *may* be insufficient to address a claimant's capacity." *Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021) (emphasis added) (quoting *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009)). The ALJ, though, "need not use the specific words 'concentration, persistence, and pace,' so long as she accounts for all the limitations she identifies." *Morrison v. Saul*, 806 F. App'x 469, 473-74 (7th Cir. 2020) (citations omitted); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (noting that "there is no magic words requirement").

The ALJ here did not merely choose a one-size-fits-all "simple work" restriction but accommodated any limitations he found Plaintiff had in the CPP domains. The ALJ took note of Plaintiff's reports "that his impairments affect his memory and concentration," such that he had "a short attention span" and was "easily distracted." (R. 20.) The ALJ also observed, however, that Plaintiff had a good attention span during a state agency psychological examination and was able to repeat numbers forward and backward and recall objects at one-, three-, and five-minute intervals. (*Id.*) The ALJ ultimately agreed with the state agency consultants that a "moderate limitation" in CPP "is supported" and, when, crafting the RFC, addressed Plaintiff's asserted

10

limitations in concentration and persistence in finding that Plaintiff could "remember simple instructions to carry out and persist on simple tasks where there is no interaction with the public." (R. 20-21.) In that final sentence of the RFC, therefore, the ALJ adopted an RFC that did address the limitations in concentration and persistence the ALJ found to be supported. *See Thompson v. Saul*, 470 F. Supp. 3d 909, 930 (E.D. Wis. 2020) ("[T]his is not a case in which the ALJ merely assumed, without meaningfully engaging with the evidence, that an RFC for simple work would accommodate plaintiff's CPP restrictions.").

Plaintiff appears to take issue with the ALJ not including a pacing limitation (like a reduced production demand or work speed), but he points to no record evidence that would support such restrictions or any need for additional supervision. A "moderate" CPP finding does not, standing alone, require a pace-related restriction in the RFC.[5] *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the 'moderate' designation; he must have evidence of that need, and he cites none."). And, here, the state agency psychological consultants at both the initial and reconsideration levels found "[n]o evidence of limitation" in the area of "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and *to perform at a consistent pace without an unreasonable number and length of rest periods*." (R. 97, 110, 129, 146.) Plaintiff's failure to show that additional limitations were warranted also indicates that any error the ALJ may have made was harmless.

Plaintiff next attacks the RFC on the ground that the ALJ improperly rejected an opinion of Dr. Rowles, Plaintiff's treating psychiatrist since 2019. As the ALJ describes it, in December 2020, while Plaintiff was admitted for psychiatric hospitalization, Dr. Rowles completed a mental

---

[5] Notably, "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1)). The word "fair" on its own indicates neither "bad" nor "inadequate" performance in that area. *Id*.

11

impairment questionnaire for Plaintiff, in which he opined that Plaintiff was "markedly limited in many categories, including maintaining attention and concentration for extended periods [21% of the workday], sustaining an ordinary routine without special supervision, and completing a normal workday and workweek without interruptions from psychologically based symptoms and perform[ing] at a consistent pace without an unreasonable number and length of rest periods." (R. 28.) The ALJ found this opinion "minimally persuasive" because "the assessment was filled out while [Plaintiff] was in the hospital" on Dr. Rowles's advice after Plaintiff had thoughts of self-harm. (R. 28-29.) The ALJ found that "the answers [we]re not well supported by Dr. Rowles's own outpatient findings that occurred prior to that time" and Plaintiff's "continued improvement" thereafter. (R. 28-29.)

Plaintiff protests that Dr. Rowles "was in the best position to opine on Plaintiff's functional limitations" due to their two-year treating relationship and Plaintiff's hospitalization "should warrant greater consideration" of Dr. Rowles's opinion. The Court does not deem it illogical for the ALJ to have viewed Dr. Rowle's December 2020 questionnaire as providing Plaintiff's condition at the time of the assessment; in any event, Plaintiff's argument is an unveiled invitation for the Court to reweigh that evidence, which the Court must not do. *See Lee v. Sullivan*, 988 F.2d 789, 793–94 (7th Cir. 1993) (explaining that court's "role is not to reweigh any conflicting evidence" and that court should uphold decision "so long as reasonable minds may differ") (citation omitted).

Plaintiff also contends the ALJ's stated basis for largely rejecting Dr. Rowles's opinion—improvement in Plaintiff's condition—was incorrect because Plaintiff's 2021 medication change to esketamine evidences that he was not seeing sustained improvement on other medications. (Dkt. 16 at 11-12.) Regardless of whether the Court would have reached the same conclusion as the ALJ on these issues, it is not the Court's function to re-weigh the evidence as Plaintiff invites,

12

particularly because the ALJ did engage in general with the contrary evidence upon which Plaintiff relies.

Plaintiff also insists the ALJ was required to consider the time required for his esketamine treatments in formulating the RFC. (Dkt. 16 at 10.) The ALJ, though, did mention Plaintiff's esketamine treatments; as the Commissioner points out (Dkt. 18 at 6), it was Plaintiff's burden to show the treatments would require missing work. *See Chestine G. v. Saul*, No. 18-cv-4980, 2020 WL 1157384, at *10 (N.D. Ill. Mar. 10, 2020) (noting that claimant has burden of showing appointments "would only be able to occur during working hours"). Plaintiff points to no such evidence regarding the availability of treatments during off-work hours. Accordingly, the Court finds no non-harmless error as to the ALJ's formulation of the RFC. The Court will not remand on this basis.

B.      **The ALJ's Decision Comports with SSR 16-3p.**

Plaintiff also argues the ALJ's analysis violates SSR 16-3p. In particular, Plaintiff disputes the ALJ's assessment that Plaintiff's condition had improved,[6] which, Plaintiff argues: (1) conflicted with the June 2021 updated agency psychiatric consultative examination note indicating Plaintiff had performed poorly on a recall assessment and Plaintiff's overall treatment history; and (2) and did not recognize that Plaintiff might have had an earlier period of disability.

SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) provides guidance for determining whether an individual is disabled. The ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, and the claimant's level of pain or symptoms, aggravating

---

[6] In defending the ALJ's decision, Defendant glancingly references the ALJ's statement that Plaintiff improved when compliant with treatment (Dkt. 18 at 4), and Plaintiff in his reply responds that "if the ALJ relies on noncompliance with treatment" he "must also consider the reasons for noncompliance. (Dkt. 19 at 12-13.). The Court, though, does not read the ALJ's opinion to rely upon any noncompliance with treatment.

or precipitating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

Here, as SSR 16-3p requires, the ALJ engaged with Plaintiff's alleged symptoms, state agency psychiatric evaluations, treatment records, and activities in reaching his conclusions and then accommodated the limitations he found Plaintiff had. Plaintiff faults the ALJ for stating, in part, that "[a]ll [Plaintiff] did is endorse his symptoms" in the June 2021 state agency psychiatric assessment, but the ALJ made this statement in the context of evaluating that assessment in conjunction with other evidence of record as to Plaintiff's memory, including Plaintiff's subjective reports, objective medical records, his recent employment as a cashier, and Plaintiff's generally unremarkable results in the June 2021 examination. It is clear the ALJ did not discount the June 2021 assessment solely because it contained Plaintiff's self-reported symptoms.

And, although Plaintiff asserts the ALJ "ignored evidence" contrary to his finding that Plaintiff had improved over time, the ALJ did not overlook the evidence Plaintiff references. Specifically, the ALJ noted that Plaintiff was treated with esketamine and attended therapy sessions, many records of which he detailed. While he did not count the number of appointments, as Plaintiff does in his briefing, the mere tally of appointments does not, without more, indicate the ALJ overlooked the treatment. "The fact that the ALJ did not mention every piece of evidence cited by [Plaintiff] is of no moment where – as here – the ALJ did not ignore an entire line of evidence that is contradictory to his findings." *Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *7 (N.D. Ill. Oct. 25, 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 901, 903 (7th Cir. 2021); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

The ALJ also did not obviously over-rely on Plaintiff's activities in reaching his conclusions as to Plaintiff's limitations and abilities. Unlike the ALJ in *Mendez v Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006), which Plaintiff cites (Dkt. 16 at 15), the ALJ here did not rely on

14

mere occasional "household activities" to infer that Plaintiff was capable of performing full-time work. Instead, the ALJ assessed Plaintiff's six-month employment; his driving abilities; his travel to Las Vegas and Minnesota; outings with friends; and his ongoing job search, in the course of determining their consistency with Plaintiff's stated severity of symptoms. The ALJ expressly "recognize[d] that [the described] activities do not equate to working a full-time job, but they also do not support that he is as limited as he alleges and were considered when evaluating his symptoms." (R. 27.) The Court finds no error in the ALJ's consideration of these factors along with Plaintiff's subjective statements. *See Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *6 (N.D. Ill. Oct. 25, 2023) (approving of, among other things, ALJ's consideration of travel and part-time employment as an Uber driver "to discount Claimant's subjective statements regarding the severity of his symptoms"); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (finding ALJ permissibly considered travel among activities that undermined claimant's subjective complaints); *Berger v. Astrue*, 516 F.3d 539, 544-45 (7th Cir. 2008) (finding ALJ permissibly considered claimant's ability to work a part-time job when assessing his subjective statements regarding his impairment).

Plaintiff also takes issue with the ALJ finding the statement of Plaintiff's mother "somewhat persuasive to the extent they are supported by the objective medical evidence," without explaining which parts of the statement the ALJ found consistent or inconsistent.[7] Although, again, it aids review to have such information identified, any error is harmless because Plaintiff does not point to any part of the statement that, if accepted as fully persuasive, would render the ALJ's decision unsupported by substantial evidence.

---

[7] Notably, Plaintiff relies upon case law involving a minor applicant for disability (R. 16 at 16); "in claims for child disability, nonmedical sources . . . 'can provide helpful longitudinal evidence about how an impairment affects [his] functional abilities and limitations on a daily basis.'" *Andrew L. v. Kijakazi*, No. 20-cv-1609, 2021 WL 5447035, at *4 (N.D. Ill. Nov. 22, 2021). This case does not involve a minor's claim for disability.

15

Even though Plaintiff's condition warrants ongoing treatment and his symptoms may wax and wane (as do many non-disabling conditions), here, the ALJ considered the related underlying evidence. The ALJ addressed Plaintiff's treatment history, including hospitalizations and ongoing counseling and medications, along with Plaintiff's activities and reports of treatment. Accordingly, the ALJ's decision is supported by substantial evidence under the circumstances. *See Ramos v. Kijakazi*, No. 22-2899, 2023 WL 4554539, at *2-3 (7th Cir. July 17, 2023) (affirming denial of benefits as supported by substantial evidence where plaintiff had been hospitalized twice and arrested after an "anger episode"); *Maria S. v. Kijakazi*, No. 20-cv-6727, 2023 WL 7130376, at *9 (N.D. Ill. Oct. 30, 2023) (finding "claimants arguments [] insufficient to overturn the ALJ's assessment of Claimant's subjective symptoms" where "ALJ permissibly considered Claimant's course of treatment, the longitudinal record, and then-current employment in reaching a conclusion that Claimant was not as limited as she claimed"); *Abigail C. v. Kijakazi*, No. 3:22-cv-50172, 2023 WL 3585760, at *3 (N.D. Ill. May 22, 2023) (noting that ALJ had "specifically addressed" adverse evidence such as "Plaintiff's psychiatric hospitalization in April 2018 and . . . that she 'screamed the entire session' in September 2018'" as well as her "altercations with her mother, self-injurious behavior, paranoia, suicidal ideation, anxiety, judgment that was only 'fair,' anger, and fidgeting" and thus, "[a]lthough Plaintiff may not agree with the significance the ALJ assigned to these mixed findings, Plaintiff 'cannot prevail' on a claim of cherry-picking") (citation omitted); *Benito M. v. Kijakazi*, No. 20-cv-5966, 2022 WL 2828741, at *6 (N.D. Ill. July 20, 2022) (explaining that ALJ did not "cherry-pick" and discuss only evidence in support of denying benefits but instead considered that claimant had been hospitalized for suicidal ideation, had ongoing suicidal ideations at times, and other relevant factors).

In the end, the ALJ's reference to Plaintiff's improvement over time did not mean the ALJ found Plaintiff had no limitations due to his condition; instead, the ALJ identified Plaintiff's

16

limitations and accounted for them. The record here contains evidence both supporting and opposing a finding that Plaintiff was disabled, but the Court cannot reweigh this evidence as Plaintiff requests. *See Thompson K.*, 2023 WL 7016621, at *7 ("Claimant's effort to minimize the significance of the evidence cited by the ALJ is nothing more than an invitation to reweigh the evidence, which the Court cannot do.") (citing *Gedatus*, 994 F.3d at 901).

Ultimately, because the Court cannot say the ALJ erroneously considered the factors set forth by SSR 16-3p, the Court cannot remand on this basis.

### III. CONCLUSION

For the reasons detailed above, Plaintiff's motion for summary judgment (Dkt. 16) is granted, and the Commissioner's motion (Dkt. 17) is denied. The decision of the Commissioner is affirmed.

ENTERED: February 23, 2024

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge